[1] Reported in 6 N.W.2d 466.
Howard T. Abbott, a resident of Duluth, Minnesota, and a member of the bar of that city for many years, died October 5, 1939. Thereafter the state of Minnesota filed a claim in the probate court of St. Louis county against Mr. Abbott's estate for additional income taxes for the years 1936 to 1939, inclusive. The probate court disallowed the claim. On appeal, the district court reversed the probate court, made findings of fact and conclusions of law in favor of the state, and remanded the cause for further proceedings in conformity with its decision. The executor of the estate appeals from an order denying his motion for a new trial.
The facts essential to decision are stipulated and may be summarized thus: In each of the years 1936, 1937, 1938, and that part of 1939 preceding his death, decedent earned taxable income in the state of Minnesota, where he was domiciled. For each of those years he filed a state income tax return in which he deducted from his gross income certain claimed losses sustained by him in connection with mining ventures conducted outside of Minnesota. The so-called losses are stated in chronological order in the stipulation of facts and summarized in appellant's brief into three classes. The state approves the summarization. It reads: *Page 291 
"1. (a) In the year 1934, Mr. Abbott and certain Duluth associates undertook to secure an option to purchase a certain property in the State of California erroneously called the 'Burlington Gold Mine.' This was pursuant to an agreement between Mr. Abbott and his associates that if they should secure a valid option on that property, and if upon exploration it should develop that the same could be profitably operated, then the associates would organize a corporation to own and operate it, and that each of the associates would take stock for his expenditures pro rata according to the sum contributed by him to the enterprise.
"Under such an arrangement with his associates, Mr. Abbott assumed the business management of the enterprise and eventually succeeded in having the title to the property cleared up and vested in a definite ownership and secured an option to purchase the same, under which he was entitled to exclusive possession of the property for a substantial period of time for the purpose of exploration. The option was taken in Mr. Abbott's name for the benefit of himself and his associates under the contract above mentioned. It provided for disposition of such gold, if any, as might be discovered and recovered during the progress of the exploring operations.
"In clearing up the title to said property, securing said option, and exploring the same, Mr. Abbott and his associates expended a total of $43,602.41, of which amount the decedent contributed $6,720.48.
"In the year 1936, it was determined by the decedent and his associates that said property was worthless. No gold was recovered. They therefore relinquished their option and decedent charged off as loss his entire share of the entire expenditures, and deducted the same in making out his 1936 state income tax return. No issue was raised as to the year in which decedent's loss was deductible, if at all.
"(b) In the year 1935, the decedent and two Duluth associates undertook to locate and secure another gold mining property outside of Minnesota which could be operated at a profit. This enterprise *Page 292 
was undertaken under an arrangement for the organization of a corporation to take and operate such property, if one were secured, and the acceptance of stock for the expenditures made by the parties, exactly as in the case of the Burlington Mine property.
"Under that agreement, decedent, acting as the business manager for his associates, secured an option to purchase the so-called 'Kearns Mine' situated in Nevada, said option including the right of exclusive possession of the property for the purpose of exploring the same.
"The decedent and his associates thereupon explored said property and expended upon such exploratory operations and all incidental expenses in connection with said enterprise the sum of $20,266.06, of which decedent contributed $6,755.33, and an additional $36.00, making a total of $6,791.33. Thereafter, and during 1936, the decedent and his associates determined said property to be worthless and abandoned the same; and decedent deducted such $6,791.33 also from his 1936 Minnesota gross income in his 1936 state income tax return.
"2. In November, 1935, the decedent, for the benefit of himself and two Duluth associates, entered into a contract with Messrs. Laycock and Harwich, pursuant to which decedent and his associates paid those gentlemen $1,500.00, of which decedent contributed $500.00, to cover their expenses as prospectors in locating, securing and developing mining claims in Saskatchewan, Canada, and elsewhere outside of Minnesota. There was a contract between the associates as above described for the organization of a corporation to take over any valuable property secured and for taking the stock of said corporation in reimbursement for their disbursements. No such property was ever located, and in 1937, the money having been expended, the decedent and his associates abandoned said project; and thereafter decedent charged off his losses and deducted the same in making out his 1937 state income tax return. *Page 293 
"3. During each of the years 1936, 1937, 1938, and that portion of 1939 prior to his death, the decedent made other expenditures and sustained other losses, as set forth in the stipulation of facts, in endeavors to locate gold properties outside of Minnesota which might be profitably operated. Such losses were likewise deducted in each year from decedent's gross income in making out his income tax return."
It further appears from the stipulation that decedent and his associates purchased a substantial amount of machinery and equipment which was used in connection with the Burlington and Kearns explorations. When the properties were abandoned the owners treated the equipment as worthless, and decedent included his share of the investment as loss in filing his income tax reports in 1935 and 1936. In each of the years 1937, 1938, and 1939, there was some salvage from the sale of this equipment, which decedent accounted for as income and which the state rejected. This is not important for the reason that if the losses are not deductible it follows that the amount recoverable as salvage is not income. The state does not contend otherwise.
Appellant admits that Mr. Abbott and his associates were seeking tangible property outside of Minnesota, and that any profit derived directly from the operation of such property would have been income from tangible property not assignable to the state of Minnesota. The state admits that if Mr. Abbott had received income in the form of dividends from the proposed corporations it would have been income from intangible property and as such assignable to this state. The only question presented is whether decedent's share of the expenditures referred to in the stipulation of facts constitute losses deductible from his Minnesota income in arriving at his net income taxable under the income tax law of this state.
The applicable provisions of the income tax statute are Minn. St. 1941, § 290.09 (Mason St. 1940 Supp. § 2394-13), which reads in part: *Page 294 
"The following deductions from gross income shall be allowed in computing net income:
* * * * * *
"(4) Losses sustained during the taxable year not compensated for by insurance or otherwise if incurred in connection with a business or transaction the gains from which, if any, would be includible in gross income"; and
Id. § 290.17 (§ 2394-23), which reads in part:
"Items of gross income shall be assigned to this state or other states or countries in accordance with the following principles:
* * * * * *
"(2) Income and gains received from tangible property not employed in the business of the recipient of such income or gains, and from tangible property employed in the business of such recipient if such business consists principally of the holding of such property and the collection of the income and gains therefrom, shall be assigned to this state if such property has a situs within it, and to other states only if it has no situs in this state."
Appellant earnestly contends that whatever gain decedent might have made through his out-of-the-state activities would reach him only in the form of dividends from the stock of the proposed corporation; that if the venture proved successful he would have had to comply with the contract to organize a corporation; and that he and his associates could not profit therefrom except as they received dividends on the stock or sold their shares at a profit. He also contends that as to the ventures in which there was no agreement to form a corporation, as a practical matter the only way decedent and his associates could receive any profit would be by forming a corporation and procuring dividends on the stock issued to them. In either event, the dividends would be taxable in this state.
As to those expenditures in connection with properties outside the state incurred pursuant to a formal written contract to organize a corporation, appellant contends that the contract is not *Page 295 
only material but that it is controlling "and characterizes the whole transaction contemplated by it." We agree with appellant's statement that formal agreements between businessmen are not to be lightly regarded. But, however binding an agreement between persons in regard to certain properties is, it does not transform their present interest in the property from a direct one of coöwnership into a representative interest evidenced by stock ownership in a corporation which is to be formed and is to become the real owner of the property. The contract itself cannot be said to have, by some sort of equitable conversion, made the corporation which was not in existence (and never did come into existence) the actual owner of the tangible properties, in connection with which decedent paid expenses. However binding the contract was, it was binding only on the individuals contracting, and there was nothing to prevent their mutually agreeing to operate the property as a partnership, to sell it at a profit, or to otherwise dispose of it. Donaldson v. Mona Motor Oil Co. 190 Minn. 231, 251 N.W. 272; Schwartzreich v. Bauman-Basch, Inc. 231 N.Y. 196, 131 N.E. 887; 6 Williston, Contracts (Rev. ed.) § 1826.
The contract provided for a corporation to be formed if minescould be profitably operated. If it became apparent that mines could not be profitably operated, but that the property disclosed some other wealth or value, the contract did not require the formation of a corporation. It would not have prevented the parties from selling the property or from using it in partnership for any purpose other than goldmining, either of which courses might conceivably have resulted in profit to the individuals. Such profits would have been received from tangible property outside the state and would have been properly taxable at the situs of the property. And expenses in connection with such property would be deductible in the tax returns to the state of the property's situs. The necessary conclusion is that profits could have been realized from tangible property outside of Minnesota, which profits would be taxable by such other state, and not by Minnesota; and that any expenses in connection with such property would be deductible *Page 296 
in such other state, not in Minnesota. It follows that decedent's expenditures incurred in connection with tangible property outside the state, whether incurred pursuant to contract to organize a corporation or pursuant to an informal agreement or to his mere intent to organize a corporation should gold be found in paying quantities, are likewise not deductible in Minnesota.
Appellant urges further that decedent made like deductions in his 1935 income tax return, that the examiner disallowed them, that decedent appealed to the tax commission, where it was determined that the items were deductible, and that no appeal was taken from the tax commission's decision. It is of course agreed that the matter of the 1935 income taxes was thereby settled. A decision of an administrative body is not binding by way of stare decisis or otherwise upon the court in a later action involving the same or similar points of law. 14 Am.Jur., Courts, p. 290, § 74. Administrative construction of statutes of doubtful meaning is persuasive, Holmes v. Borgen,200 Minn. 97, 273 N.W. 623, but it does not preclude a different construction by the court, Red Wing Malting Co. v. Willcuts (8 Cir.) 15 F.2d 626, 49 A.L.R. 459, certiorari
denied, 273 U.S. 763, 47 S.Ct. 476, 71 L. ed. 879. That great weight should be given departmental construction of taxation statutes is dependent upon such construction's having been long-continued, Allen v. Commr. of Corp. and Taxation,272 Mass. 502, 172 N.E. 643, 70 A.L.R. 1299, and uniform, United States v. Healey, 160 U.S. 136, 16 S.Ct. 247, 40 L. ed. 369. It might well be added here that the rule that ambiguities in statutes imposing taxes are to be resolved in favor of taxpayers does not apply to deductions; they are allowable only when plainly authorized. Helvering v. Inter-Mountain L. Ins. Co. 294 U.S. 686, 55 S.Ct. 572, 79 L. ed. 1227, New Colonial Ice Co. Inc. v. Helvering, 292 U.S. 435, 54 S.Ct. 788,78 L.ed. 1348.
In view of the fact that decedent justifiably relied upon the ruling of a former tax commission that like expenditures were deductible, we believe that it would be unjust and inequitable to enforce the payment of penalties and that they should be abated. *Page 297 
The commissioner has that power. Minn. St. 1941, § 290.53, subd. 5 (Mason St. 1941 Supp. § 2394-49[e]).
Affirmed as modified.