**BFW COMPANY, Relator,**

v.

**COUNTY OF RAMSEY, Respondent.**

No. C2–97–106.

Supreme Court of Minnesota.

July 17, 1997.

Larry Neilson, Rooney & Neilson, Ltd., Arden Hills, for Relator.

Susan Gaertner, Ramsey County Atty., Christine J. Kilduff, St. Paul, for Respondent.

## OPINION

GARDEBRING, Justice.

This is a property tax appeal that turns on a question of statutory interpretation—what is the extent of the statutory obligation imposed on a petitioner to provide information to the county within 60 days of the petition?

On April 1, 1996, relator BFW Company filed a Chapter 278 petition challenging the Ramsey County's January 2, 1995 valuation of Crown Plaza Shopping Center in St. Paul. Minnesota Statutes section 278.05, subdivision 6(a) requires such petitioners to provide certain information to the county within 60 days of the petition's filing, unless evidence of that information is unavailable. After BFW failed to timely provide the county with the required information, the county moved for dismissal as provided in the statute. Although BFW admitted that it failed to provide any information within the required 60 days, it argued that a change in the property's management company and accounting method made portions of the required information within its possession inaccurate and, therefore, unavailable. The tax court concluded that the petitioner's contention that the information in its possession was inaccurate did not render the information unavailable and dismissed the petition. Upon writ of certiorari, we affirm the tax court, and hold that the plain meaning of the statute requires a petitioner to provide the county assessor with all information within its possession.

The facts are largely undisputed. The Ramsey County assessor on January 2, 1995 valued Crown Plaza Shopping Center at $3,255,300. The estimated valuation increased by $755,800, or approximately 30 percent, the negotiated market valuation from January 2, 1994.[1] On April 1, 1996, the owner of the property, BFW Company, filed a petition challenging the valuation.[2] In August 1996, counsel for BFW contacted an assistant Ramsey County attorney regarding BFW's receipt of a notice setting the trial date for December 12, 1996. Despite the requirement that all petitioners challenging assessments for income-producing property[3] provide the county with information, "including income and expense figures, verified net rentable areas, and anticipated income and expenses * * * within 60 days after the petition has been filed under this chapter," Minn. Stat. § 278.05, subd. 6(a) (1996), BFW had not yet provided the county with any information. The assistant county attorney informed BFW's counsel that nothing could be done regarding the trial date because the county had yet to assign an appraiser to the petition. She also said that BFW's counsel should contact her if an appraiser had not contacted BFW by October 1, 1996. BFW's counsel again contacted the assistant county attorney on October 8, 1996, at which time she told him that the county had assigned the file to assessor Dan Flaherty. BFW's counsel immediately contacted Flaherty, who said he had yet to receive BFW's current income and expense figures. BFW supplied the current income and expense figures, along with the other required information not previously submitted, to the county in a letter dated October 10, 1996.

On October 21, 1996, the county filed a motion with the tax court seeking to dismiss the petition pursuant to section 278.05, subdivision 6(a). BFW submitted to the tax court affidavits of two officials, one who was the vice president of the firm that had managed Crown Plaza since August 15, 1995, and one who was a partner in BFW Company. According to the affidavits, BFW hired the management firm to manage Crown Plaza

---

1. The county did not establish the 1994 valuation of $2,500,000 until July 11, 1995. As it did following the valuations of Crown Plaza in 1992 and 1993, BFW filed a petition challenging the valuation in 1994 and ultimately negotiated a compromise valuation with the county.

2. Minnesota law allows a taxpayer to file a petition "on or before March 31 of the year in which the tax becomes payable." Minn.Stat. § 278.01, subd. 1 (1996). The county apparently did not contest the timing of the petition.

3. There is no dispute that Crown Plaza Shopping Center was income-producing property at the time of the petition.

beginning on August 15, 1995. Both affidavits also stated that the new management firm employed an accounting system different from that used by the old management firm. The affidavits asserted that because of this change, the two companies were unable to begin tabulating accurate income and expense information until at least August 15, 1996, the date upon which the new firm had completed a one-year cycle of managing the property. Neither of the affidavits offered in support of BFW's position addressed the company's failure to submit the other information required by the statute. In response, the county offered the affidavit of Flaherty, which stated that BFW did not supply current income and expense figures until October 10, 1996, "which was more than 60 days after filing of the petition."

The tax court concluded that the inaccuracy of the available income and expense information did not constitute "unavailability" within the meaning of section 278.05, subdivision 6(a). *BFW Co. v. County of Ramsey,* No. C9–96–3330, 1996 WL 675486, at *1 (Minn.Tax Nov.19, 1996). The court also dismissed BFW's argument that a petition should be dismissed only when the failure to timely provide the information prejudiced the county. *Id.* BFW now appeals.

The main issue before us is whether "income and expense figures" deemed by the petitioner to be unreliable or not fully accurate are "unavailable" within the meaning of section 278.05, subdivision 6(a), and further, whether the asserted unavailability of one type of information also excuses the obligation to supply the other types of information required by the statute.

■ Minnesota law limits our review of tax court cases to those in which the appellant argues that the tax court was without jurisdiction, that the tax court's decision was not justified by the evidence or in conformity with the law, or that the tax court committed an error of law. Minn.Stat. § 271.10, subd. 1 (1996); *Homart Dev. Co. v. County of Hennepin,* 538 N.W.2d 907, 910 (Minn.1995). When the parties do not dispute the relevant

facts, we review on a de novo basis legal issues, such as the matter of statutory interpretation in this case. *See Homart,* 538 N.W.2d at 910.

Minnesota law provides a mechanism for a property owner to contest a county's assessment of real estate. Minn.Stat. § 278.01 (1996). That statutory mechanism requires such petitioners to provide certain information to the county assessor within 60 days of the petition's filing date and mandates the dismissal of the petition if the information is not provided, unless it is unavailable. Minn. Stat. § 278.05, subd. 6(a).

> Information, including income and expense figures, verified net rentable areas, and anticipated income and expenses, for income-producing property must be provided to the county assessor within 60 days after the petition has been filed under this chapter. Failure to provide the information required in this paragraph shall result in the dismissal of the petition, unless the failure to provide it was due to the unavailability of the evidence at that time.

*Id.* It is undisputed that BFW failed to provide any information within 60 days of filing its petition.[4] The question before us, therefore, is whether the failure "was due to the unavailability of the evidence at that time."

BFW argues that, because of the change in accounting methods, the only "income and expense figures" available to it were unreliable and inaccurate, and therefore, were not "available evidence." For support BFW relies upon the definition of "available" contained in Black's Law Dictionary, which states that available means: "Suitable; useable; accessible; obtainable; present or ready for immediate use. Having sufficient force or efficacy; effectual; valid." *Black's Law Dictionary* 135 (6th ed.1990). BFW offers no argument for its failure to supply the other types of information required by the statute, "verified net rentable areas" and "anticipated income and expenses," which apparently were available.

---

4. BFW filed its petition on April 1, 1996 and did not provide the county assessor with any information until October 10, 1996.

The county argues that the statute does not explicitly require the submission of the best or perfect evidence. *See Adams–Lennon Co. Gen. Partnership v. County of Dakota*, No. C9–95–7333, 1995 WL 516551, at *1 (Minn.Tax Aug.24, 1995) (finding that the statute does not allow petitioner to delay providing data until it is verified by an accountant). The county contends that acceptance of BFW's position would require us to alter the plain language of the statute.

When interpreting statutes, Minnesota law requires us to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (1996). In doing so, we must first look to a statute's text, and only if we find those words to be ambiguous, are we to look into other matters to determine such intention. *Id.* If we find the words of the statute to be "free from all ambiguity," the legislature has directed us to not disregard "the letter of the law * * * under the pretext of pursuing the spirit." *Id.*

 We conclude that the interpretation of the statute urged by BFW cannot be reconciled with its plain meaning. Instead, we find that the statute clearly requires the petitioner to provide all information to which the petitioner has access, even if that information might not allow the county assessor to reach a final conclusion regarding the property's value. To put it another way, we hold that the statute's text requires the petitioner to provide all information within its possession, even though the petitioner deems certain portions of that information to be incomplete or not fully accurate. In addition, we conclude that the statute clearly requires the petitioner to provide *any* of the required information within its possession on the date of the deadline. The unavailability of one type of evidence does not render unavailable other types of information within the possession of the petitioner.

Although we need not look beyond the statute's text to reach such a result, we note that our prior decisions support our conclusion. We have determined that the legislature's purpose in passing chapter 278 was to provide "an adequate, speedy, and simple remedy for any taxpayer to have the validity of his claim, defense, or objections determined by the * * * court in matters where the taxpayer claims that his real estate has been partially, unfairly, or unequally assessed * * * ." *Continental Sales and Equip. Co. v. Town of Stuntz*, 257 N.W.2d 546, 548 (Minn.1977) (quoting *Land O' Lakes Dairy Co. v. Village of Sebeka*, 225 Minn. 540, 548, 31 N.W.2d 660, 665 (1948)). Strict enforcement of the 60–day rule is consistent with this purpose, except when the required information is simply not available to a petitioner.

 Where there is a concern about the reliability of information required by the statute, the taxpayer should so inform the county and assert its intention to provide better information at a later date.[5] The statute does not prohibit the submission of modified or more accurate data at a later date, nor does it seem likely that the county would have rejected such a submission. Had BFW provided to Ramsey County within the 60–day period all of the information available to it, BFW later could have provided more accurate figures and proceeded to argue during trial that the more recent figures better defined the property's current income and expenses. *See Equitable Life Assurance Soc'y of the United States v. County of Ramsey*, 530 N.W.2d 544, 557–58 (Minn.1995) (allowing petitioner to provide additional evidence obtained after the petitioner already had provided the required information under the statute).

 Furthermore, we note that the petitioner bears the burden of proving that an assessment is excessive. *In re Objections and Defenses to Real Property Taxes for 1970 Assessment*, 306 Minn. 184, 186, 235 N.W.2d 390, 392 (1975). As such, the petitioner also bears the burden of providing evidence that refutes the original valuation.

 In conclusion, therefore, we hold that the statute required BFW to provide those

---

5. Although such notification is not required by the statute, the record below suggests that the county would have treated such a notification as a "substitute for the data," pending its ultimate submission.

income and expense figures within its possession on the date of the deadline, along with the other information required by the statute, and that the potential unreliability or inaccuracy of the figures did not make them "unavailable" within the meaning of section 278.05, subdivision 6(a).[6]

Affirmed.

---

**6.** BFW also contends that we should overturn the dismissal on the ground that the tax court failed to find that BFW's delay in providing the information caused the county actual prejudice. We are to give effect to the plain language of a statute, unless the statute is ambiguous. Minn. Stat. § 645.16. Section 278.05, subdivision 6(a) states only that the tax court *shall* dismiss all petitions for which the petitioner fails to timely provide the required information. Nowhere does the statute embrace the exception upon which BFW now relies. As a result, we hold that the tax court did not err in failing to find actual prejudice before dismissing BFW's petition. *See Majestic Property Management Corp. v. County of Anoka*, No. C1–95–3473, 1996 WL 45909, at *1 (Minn.Tax Feb.1, 1996) (finding that statute does not require showing of prejudice).