**NORTHWEST AIRLINES, INC., Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

No. C7–00–1876.

Supreme Court of Minnesota.

Aug. 30, 2001.

Thomas R. Wilhelmy, Laurie J. Miller, Joseph G. Springer, Fredrickson & Byron, P.A., Minneapolis, for relator.

Amy Klobuchar, Hennepin County Attorney, for respondent.

## OPINION

STRINGER, Justice.

On certiorari from the tax court we consider whether relator's property tax petitions filed under Minnesota Statutes chapter 278 were properly dismissed by the tax court because relator failed to submit income and expense information within the 60 day filing deadline set forth in Minn. Stat. § 278.05, subd. 6(a) (2000). Relator contends that the parcel in question, the Main Base Building at the Minneapolis/St. Paul International Airport owned by the Metropolitan Airports Commission (MAC), is not "income-producing" and therefore not subject to the filing deadline. The tax court ruled that the Main Base Building is

"income-producing" property and dismissed relator's chapter 278 petitions for failure to comply with Minn.Stat. § 278.05, subd. 6(a). We affirm.

The Main Base Building is one of several parcels leased by MAC to relator at the airport.[1] Relator and MAC entered into a 30 year lease agreement in 1956, effective 1961, wherein MAC, as lessor, agreed to finance and construct hangers, buildings, paved areas and other improvements for relator's exclusive use for its aircraft maintenance, overhaul and operational headquarters at the airport. MAC retained title to the land and all improvements, including those constructed by relator, but relator had 90 days after the termination of the lease to remove any improvements made by relator. The 30 year lease was a "financing" lease—that is, relator agreed to make monthly payments sufficient to fund MAC's principal and interest payments and to pay incidental costs associated with bonds it issued to finance the construction of the base facilities and improvements. The lease also provided that one year prior to its expiration the parties would enter into "bona fide" negotiations for a new lease "upon such rates, covenants and conditions as are adequate, reasonable and fair in light of the conditions then existing at said Airport, including the then going rates and lease terms to other scheduled air carriers * * *."

The 1961 lease expired on June 30, 1991 but was extended from month to month until a new lease agreement effective January 1, 1995 was signed.[2] The Tax Court found the 1995 lease was an arm's length, negotiated agreement designed to arrive at fair rental value rather than amortize bond costs. The 1995 lease required relator to pay rent beginning at $83,333 per month in 1995, increasing to $383,000 per month in 2001 and decreasing to $381,250 per month in 2002 through August 31 of that year. The Main Base Building is exempt from real property taxes because it is owned by MAC, Minn.Stat. § 473.608, subd. 2 (2000), but because MAC leases the property to relator for use in connection with a business conducted for profit, relator is obligated to pay taxes on the property under Minn.Stat. § 272.01, subd. 2(a) (2000), as if it were the owner. Relator filed separate timely chapter 278 property tax petitions challenging the assessed value of properties it leases from MAC at the airport for taxes payable in 1997, 1998 and 1999. The parties were unable to resolve the 1997 and 1998 challenges to the value of the Main Base Building and other properties, and the tax court consolidated those for trial with the 1999 petition.

The county assessor was apparently unaware of the existence of the 1995 lease until October, 1999 when MAC provided a copy to the assessor, and relator also submitted a copy in response to respondent's discovery request.[3] On January 5, 2000

---

1. Also known as Building B, the Main Base Building consists of office space and aircraft maintenance hangers and is located south of the main entrance drive to the airport.

2. Prior to signing the 1995 lease, MAC commissioned an appraisal of the fair rental value of the base facilities.

3. A senior appraiser at the Hennepin County Assessor's Office submitted an affidavit stating that he had not been advised and was unaware of the 1991 lease extension and the

1995 escalating rent lease until he received a copy of the lease from MAC on October 22, 1999. The dissent contends that respondent knew that the original lease had changed to a market-based lease as of June 30, 1991 because the original lease called for the negotiation of a market-based lease before its expiration. Those negotiations were not completed however, until the new lease was signed and made effective January 1, 1995. In any event, it was incumbent upon relator under Minn. Stat. § 278.05, subd. 6(a), to provide the in-

respondent filed a motion to dismiss the petitions under Minn.Stat. § 278.05, subd. 6(a), which provides:

Information, including income and expense figures, verified net rentable areas, and anticipated income and expenses, for income-producing property must be provided to the county assessor within 60 days after the petition has been filed under this chapter. Failure to provide the information required in this paragraph shall result in the dismissal of the petition, unless the failure to provide it was due to the unavailability of the evidence at that time.

Relator and respondent agreed on the taxable value of all the remaining parcels subject to relator's petitions except the Main Base Building, and the tax court's grant of respondent's motion to dismiss the petitions under section 278.05, subdivision 6(a) as they relate to relator's challenges to taxes payable on the Main Base Building is now the only matter before the court.

■ The tax court ruled that relator's petitions are barred by Minn.Stat. § 278.05, subd. 6(a) because the Main Base Building is income-producing property for purposes of the 60 day rule in section 278.05, subdivision 6(a) and relator failed to provide the county assessor with the statutorily required information within the 60 day filing deadline. The tax court reasoned that property is "income-producing" if "income is being generated for the use of the property" and concluded that income is generated for the use of the Main Base Building because relator pays rent to MAC to use the property under an arms-length lease. Relator disputes the tax court's ruling arguing that relator is not subject to the 60 day filing deadline because it owns and occupies its leasehold, and therefore for property tax purposes it is considered

the owner, by definition owner-occupied property is not income-producing.

■ Our review of decisions of the tax court is limited to whether the court had jurisdiction, whether its decision was justified by the evidence and in conformity with the law or whether it committed an error of law. Minn.Stat. § 271.10 (2000). We review questions of law de novo. *BFW Co. v. County of Ramsey,* 566 N.W.2d 702, 704 (Minn.1997).

■ The traditional notion of "income-producing" property is property that generates rental income for its owner on the basis of an arms-length, market-based lease, *see Equitable Life Assurance Soc'y. v. Ramsey County,* 530 N.W.2d 544, 549 (Minn.1995) but the term is not necessarily limited to rental property. *See Montgomery Ward & Co. v. County of Hennepin,* 450 N.W.2d 299, 303–04 (Minn.1990). Since 1995 relator has paid MAC rental payments for the use and enjoyment of the property based on an arms-length, market-based lease. Relator contends however, citing Minn.Stat. § 272.01, subd. 2(a), (c), (d) (2000) and Minn.Stat. § 273.19, subd. 1 (2000), as well as our decisions in *In re McCannel,* 301 N.W.2d 910 (Minn.1980), and *Northwest Airlines, Inc. v. County of Hennepin,* 537 N.W.2d 488 (Minn.1995), that the Main Base Building is not income-producing property because the legislature intended that relator's leasehold interest, not MAC's fee interest, should be the taxable subject property-therefore we must disregard the 1995 lease.

We disagree. The legislature has plainly provided in Minn.Stat. § 273.11, subd. 1 (2000), that relator's leasehold interest is not the property interest that is to be valued for purposes of imposing the property tax on the Main Base Building: "All

come and expense information within 60 days

after filing its chapter 278 petitions.

property, or the use thereof, which is taxable under section 272.01, subdivision 2, or 273.19, shall be valued at the market value of such property *and not at the value of a leasehold estate in such property,* or at some lesser value than its market value." Minn.Stat. § 273.11, subd. 1 (emphasis added).[4] As the value to be determined for tax purposes is the market value of the Main Base Building, the terms and conditions of the 1995 lease, including rent, are critical, as they provide what the parties determined in an arms-length negotiation to be the value of the property, as reflected by the rent to be paid. Capitalizing the income a property generates in rent to arrive at its market value—the income approach—is one of the three traditional approaches to determining market value.[5] It makes no difference whether the taxpayer is lessor or lessee, as the importance of the income-producing nature of the property is in arriving at a reliable market value for tax purposes. Thus we conclude that the tax court did not err in concluding that the Main Base Building is income-producing property for the periods in question.[6]

Relator contends however, that despite section 273.11, subdivision 1, its leasehold interest is the taxable property interest at issue because section 272.01, subdivision 2(a), (c) and (d), require that it be treated as the owner of the property. Relator's construction of section 272.01, subdivision 2 is not persuasive. Section 272.01, subdivision 2 provides in relevant part:

(a) When any real or personal property which is exempt from ad valorem taxes, and taxes in lieu thereof, is leased, loaned, or otherwise made available and used by a private individual, association, or corporation in connection with a business conducted for profit, there shall be imposed a tax, for the privilege of so using or possessing such real or personal property, in the same amount and to the same extent as though the lessee or user was the owner of such property.

\* \* \* \*

(c) Taxes imposed by this subdivision are payable as in the case of personal property taxes and shall be assessed to the lessees or users of real or personal property in the same manner as taxes

4. Minnesota Statutes § 273.19, subd. 1 (2000) by its terms does not apply here.

5. The other two approaches are a comparison of sales of comparable properties and replacement cost. *Am. Express Financial Advisors, Inc. v. County of Carver,* 573 N.W.2d 651, 657 (Minn.1998).

6. When the legislature considered the adoption of the 60 day rule in 1994, a member of the House Tax Committee expressed concern about how a property owner would know whether the subject property is "income-producing." In response a representative from the Hennepin County Assessor's Office testified that the county assessor warned property owners that their property was subject to the then 45 day rule relating to information to be provided on income-producing property, suggesting that the county assessor would continue that practice with respect to the 60 day rule. Hearing on H.F. 2890, H. Comm. on

Taxes, 78th Minn. Leg., Mar. 25, 1994 (audiotape) (statement of Tom May, Assistant Hennepin County Assessor). In the matter now before this court, Daniel Salzwedel, a Senior Appraiser in the Hennepin County Assessor's office, submitted an affidavit stating that the Assessor's Office does *not* make a practice of warning property owners that information relating to income-producing property must be provided before the 60 day filing period expires. We share the concern expressed by the member of the Tax Committee that an owner of non-rent-generating property may have inadequate notice that the property might be assessed as income-producing property and thus be subject to the 60 day rule. While not an issue here because the Main Base Building is clearly income-producing property, the issue might not be so clear where the property is not subject to a lease.

assessed to owners of real or personal property * * *.

(d) The tax on real property of the state or any of its political subdivisions that is leased by a private * * * corporation and becomes taxable under this subdivision * * * must be assessed and collected as a personal property assessment. The taxes do not become a lien against the real property.

Minn.Stat. § 272.01, subd. 2. Paragraph (a) imposes a tax on relator for the use of MAC's tax exempt property for commercial purposes in an amount and to the same extent as though relator was the owner of the Main Base Building. The tax is payable as a personal property tax pursuant to paragraph (c) but is to be assessed to relator in the same manner as the property tax would have been assessed to the owner of the Main Base Building— MAC. Paragraph (d) provides that relator's personal property tax cannot become a lien against the Main Base Building. In essence, paragraphs (a), (c) and (d) of section 272.01, subdivision 2 shift the real property tax liability to relator as a personal property tax in an amount MAC would have had to pay had MAC not been an exempt property owner.

Relator's reliance upon our decisions in McCannel and Northwest Airlines is equally unpersuasive. In McCannel we stated that relator "is treated as feeholder of the [airport] property for purposes of the taxing statute," 301 N.W.2d at 914, and in Northwest Airlines we observed that the parties stipulated that the property relator leases from MAC at the airport is taxed as personal property pursuant to Minn.Stat. § 272.01(2) (1990). 537 N.W.2d at 488–89. Both are based squarely on the statutory framework in section 272.01, subdivision 2. The issue of what property interest is to be assessed was not raised in either case.

■ Relator next contends that the county should be collaterally estopped from arguing that the Main Base Building is income-producing property because in McCannel we ruled that the airport property is "special purpose," and therefore, relator contends, as special purpose property it is not income-producing property for real estate tax purposes. McCannel, 301 N.W.2d at 914. While we observed in McCannel that the cost approach is best suited for valuing special purpose property, at no point did we say that the special-purpose nature of the property bars its assessment as income-producing property. Id. Where special-purpose property is subject to an arms-length lease, as here, it may indeed be more reliably valued using the income approach with the lease serving as a key source of information. We therefore reject relator's claim of collateral estoppel.

■ Relator also raises arguments in equitable estoppel and laches. We have held that a private party seeking to apply equitable estoppel against a government agency acting in its sovereign capacity has a heavy burden of proof, including a showing that the private party's detrimental reliance was induced by the government's wrongful conduct. Ridgewood Dev. Co. v. State, 294 N.W.2d 288, 292 (Minn.1980). The assertion of the relator and the dissent that respondent unfairly changed the assessment approach is wholly unfounded, as the record supports the conclusion that the county was not aware of the 1995 lease until October 22, 1999–long after the 60 day filing deadline for the tax years at issue had passed. Relator cannot claim it relied on respondent's conduct when it failed to inform respondent of the existence of the lease, despite numerous requests over several months. This is not an effort to take unfair advantage of the 60 day statutory requirement, as the dissent

alleges—it is the application of the 60 day notice statute to a vastly different lease arrangement between MAC and relator, recently disclosed to respondent.

■ As to relator's laches argument, section 278.05 subd. 6(a) confers no discretion on respondent to rely upon or waive the 60 day rule unless there is evidence that failure to comply was due to the unavailability of necessary information. *Id.* The petitioner must provide income and expense information within 60 days after the petition is filed or the petition must be dismissed.[7]

■ Finally, relator contends that even if the Main Base Building is income-producing property, the terms of the lease are neither necessary nor appropriate for determining market value. Respondent concedes that it relies on the cost approach for the "mass assessment" of the Main Base Building, but the record also indicates that respondent did not consider the income approach for valuing the Main Base Building because it was unaware of the 1995 market-based lease. As stated above, an arms-length lease provides important information for valuing income-producing property. We conclude that the tax court did not err in determining that the 1995 lease was income and expense information relator was required to provide under section 278.05, subdivision 6(a).

We hold that the Main Base Building is income-producing property for the period covered by the chapter 278 petitions and relator's failure to provide respondent with a copy of the 1995 lease within 60 days of filing the petitions constituted a failure to provide income and expense information as required under section 278.05, subdivision 6(a). The tax court therefore did not err

in dismissing relator's 1997, 1998 and 1999 property tax petitions with respect to the Main Base Building.

Affirmed.

PAUL H. ANDERSON, J. (concurring).

I concur in the result reached by the majority, but write separately to clarify particular concerns I have about this case.

There is no question that the MAC is the owner of the Main Base Building. Nor is there any question that under Minn. Stat. § 272.01, subd. 2(a) (2000), Northwest must pay a tax because of its interest in the Main Base Building. Minnesota Statutes § 272.01, subd. 2(a), provides that a lessee in Northwest's position must pay a tax on leased property "in the same amount and to the same extent as though the lessee * * * was the owner of the property." *Id.* However, the tax paid is not an owner's real estate tax, but is a personal property tax. *Id.*, subd. 2(c).

There is also no question that when a party, such as Northwest, petitions to challenge the assessed value of a property, the 60 day rule in Minn.Stat. § 278.05, subd. 6(a) (2000), applies if the property is "income-producing property." *Id.* Nor is there a question that subdivision 6 applies to both real and personal property. But the result of failing to abide by the 60 day statutory deadline is harsh-if the petitioner does not comply, the petition is dismissed. Here, the difficulty in complying with the statute is the complex scheme of classifying the petitioner as an owner/leaseholder and classifying the property as income-producing property even though the

---

7. Minn.Stat. § 278.05, subd. 6(a) ("Failure to provide the information required in this paragraph shall result in the dismissal of the peti- tion, unless the failure to provide it was due to the unavailability of the evidence at that time.").

source of the income is the lease payments made by the petitioner.

It is not that difficult for us—after a petition has been filed, a tax court hearing held, and an appellate review conducted—to conclude that for purposes of Minn.Stat. § 278.05, subd. 6(a), the property at issue is income-producing. However, due to the complexity of the tax scheme, it is oftentimes difficult to fit the essential pieces together and still comply with the 60 day deadline. A high potential for prejudice to the petitioner exists because of the interaction between the tax scheme and the 60 day deadline. Despite this, I conclude that no prejudice occurred here and the result reached by the majority is correct. However, I suggest that the legislature may wish to revisit this statutory scheme and its consequences, especially in light of a legislative history that indicates that the legislature anticipated that a property owner would get notice of the applicability of section 278.05, subd. 6(a), to a petition and the respondent's concession that, in fact, no such notice is provided. Hearing on H.F. 2890, H. Comm. on Taxes, 78th Minn. Leg., Mar. 25, 1994 (audiotape) (statement of Tom May, Assistant Hennepin County Assessor).

On a final note, I also write to express my concern with the majority's discussion of the income approach accounting method as part of its statutory interpretation analysis. The approach a county assessor uses to determine the market value of a property is not relevant to determining whether that property is correctly classified as income-producing. Thus, the discussion of the income approach is distracting. Regardless of the proper approach for determining the market value of income-producing property, Minn.Stat. § 278.05, subd. 6(a), requires a petitioner to provide the county assessor with "verified net rentable areas, and anticipated income," which would include the lease at issue in this case.

GILBERT, Justice (concurring in part and dissenting in part).

I generally concur with the legal reasoning of the majority, but do not believe that its analysis should be applied under these facts to deprive Northwest Airlines of a hearing. For over 20 years, since our decision in *In re McCannel*, 301 N.W.2d 910, 923–24 (Minn.1980), Hennepin County has been valuing this leased property by using a traditional cost approach for this special use property. Then on January 4, 2000, the county switched its appraisal approach after the 60 day filing requirement in Minn.Stat. § 278.05, subd. 6(a) (2000) had expired. The county is trying to take unfair advantage of this change in strategy without notice to Northwest after a long-term course of dealings using a different classification that did not require income figures.

The county stated that it found out about a new lease after the 60–day period had expired. But the county knew that this public property was always leased by Northwest. This facility had been under lease since 1956 and, although the initial lease expired in 1991 and was a month-to-month lease thereafter, the county had been aware of the leased nature of this property for over 40 years. In fact, we made reference to the initial lease in *McCannel*. However, even though the county knew of a lease all along, until now the county had always used the traditional cost approach for this special use, leased property rather than the income approach. The tax court also noted that "[p]etitioner, as tenant of the MSP [Minneapolis/St. Paul International Airport], has filed petitions contesting the assessed value of the MSP since 1957."[1] The terms of the lease

---

1. *Northwest Airlines, Inc. v. County of Hennepin*, No. TC 25905, TC 26548, TC 27651, 2

changed over the years, but not the lease-hold nature of Northwest's interest in the property. The county also knew that the original lease would be "market based" as of June 30, 1991, when the original lease expired, because that term was in the original lease. However, the county waited almost 9 years to change its classification.

Minnesota law provides a mechanism for a property owner to contest a real estate assessment. Minn.Stat. § 278.01 (2000). That statutory mechanism requires petitioners challenging the assessed value of income-producing property to provide certain information to the county assessor within 60 days after filing the petition. Minn.Stat. § 278.05, subd. 6(a). Failure to provide that information results in the dismissal of the petition unless the required information is unavailable. *Id.; BFW Co. v. County of Ramsey*, 566 N.W.2d 702, 704 (Minn.1997).

Here, Northwest failed to provide that information within 60 days, and its petition was dismissed. While this result is consistent with the language of the statute, the unfairness lies in the fact that Northwest was unaware that it was required to submit certain information and comply with the 60 day statutory deadline in Minn.Stat. § 278.05, subd. 6(a). Northwest was unaware because the county did not provide notice that it had changed its classification of the subject property to income-producing property.

Based on these facts, I believe it is unfair and inequitable for Hennepin County to benefit by its changed tactics. This result reached by the majority is especially unjust based on the Hennepin County Assessor's office testimony in front of the House Tax Committee when the 60 day rule was adopted in 1994. The assessor testified that the county warned property owners that their property was subject to the then-current 45 day rule relating to information to be provided on income-producing property, suggesting that the county assessor would continue that practice with respect to the 60 day rule. Hearing on H.F. 7890, H. Comm. on Taxes, 78th Minn. Leg., Mar. 25, 1994 (audiotape) (statement of Tom May, Assistant Hennepin County Assessor). However, in truth and fact, in this case the Hennepin County Assessor's office submitted an affidavit stating the assessor's office does not make a practice of warning property owners that information relative to income-producing property must be provided before the 60 day filing period expires. The county did not warn Northwest of its practice or its change in classification of this building, and did not even request a copy of the actual lease until over 1 year after the 60 day period had expired.

Accordingly, I would affirm the tax court's analysis, but I would make this decision prospective and remand for a hearing on the tax years in question.

PAGE, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Gilbert.