STATE OF MINNESOTA

IN SUPREME COURT

A15-0018

Tax Court                                                              Anderson, J.

KCP Hastings, LLC,

                 Relator,

vs.                                                          Filed:  August 12, 2015
                                                      Office of Appellate Courts
County of Dakota,

                 Respondent.

_____

Dan Biersdorf, Ryan Simatic, Biersdorf & Associates, P.A., Minneapolis, Minnesota, for
relator.

James C. Backstrom, Dakota County Attorney, Suzanne W. Schrader, Assistant County
Attorney, Hastings, Minnesota, for respondent.

_____

S Y L L A B U S

1.     The tax court did not clearly err by measuring the subject property using

the gross leasable area rather than the gross building area, because the court's valuation

accounted for the lack of common area in comparable properties.

2.     The tax court did not clearly err when it rejected relator's valuation, which

was based on the sales-comparison approach, because a majority of the subject property's

tenants have external entrances, unlike the tenants at the fully enclosed malls used by

relator as comparable properties.

1

3.     The tax court clearly erred when it rejected relator's discounted-cash-flow analysis because relator introduced sufficient data into evidence for the court to verify relator's analysis or conduct its own analysis.

4.     The tax court abused its discretion by relying solely on the sales-comparison approach to valuation to determine the market value of an income-producing property, when the parties rely heavily on the income approach and provide credible reliable income data to the court.

Affirmed in part, vacated and remanded.

Considered and decided by the court without oral argument.

O P I N I O N

ANDERSON, Justice.

Relator KCP Hastings, LLC ("KCP"), challenged respondent Dakota County's estimated assessment of the market value of its shopping mall for the assessment dates of January 2, 2010, January 2, 2011, and January 2, 2012. After a 2-day trial, the tax court adopted market valuations of the property that exceeded the County's estimated assessments. KCP asserts three grounds for error. First, KCP argues that the tax court clearly erred by using the mall's gross building area rather than its gross leasable area to measure the property. Second, KCP argues that the tax court clearly erred when it rejected KCP's valuations using the sales-comparison and income approaches because the court could not "replicate" KCP's discounted-cash-flow analysis ("DCF analysis"). Third, KCP argues that the tax court abused its discretion by determining the value of the

2

subject property relying solely on the sales-comparison approach. We affirm in part, vacate, and remand.

KCP owns Westview Shopping Center ("Westview Mall" or "Mall"), a multi-tenant retail strip mall in Hastings. Westview Mall was built in 1976; it has a gross building area of 153,749 square feet[1] and a gross leasable area of 129,475 square feet. The Mall includes two larger tenant spaces, which were leased to Goodwill and Clancy's Drug on the assessment dates, and 23 smaller tenant spaces, 5 of which were vacant on the date of the 2010 valuation, and 10 of which were vacant on the date of the 2012 valuation.

For property tax purposes, the Dakota County Assessor estimated the market value of Westview Mall to be $4,791,600 as of January 2, 2010; $4,821,700 as of January 2, 2011; and $4,821,700 as of January 2, 2012. KCP challenged the estimated assessments, and the matter proceeded to trial on June 3-4, 2014. Both parties hired appraisers, who submitted appraisal reports to the tax court and testified at trial. The County's appraiser, Brian Ducklow, estimated the Mall's property value using the three traditional approaches: income, sales-comparison (or "market"), and cost. He opined that the income approach was the "most relevant method for the subject property" and gave it

---

[1] The parties' appraisers differed on the scope of the gross building area of the Mall. KCP's appraiser measured the Mall at 153,749 square feet, and the County's appraiser measured it at 140,852 square feet. The parties stipulated to the County's measurement of 140,852 square feet, but the tax court independently verified through floor plans that the correct measurement is 153,749 square feet. Although KCP notes in its brief that the tax court deviated from the stipulated measurement, it does not assert that the court clearly erred by doing so.

3

70% weight for his final valuation. He used a direct-capitalization technique to arrive at his income-approach valuation. Ducklow gave 25% weight to the sales-comparison approach, which compared Westview Mall to six malls located in the Twin Cities metro area. He gave only a 5% weight to the cost approach.

KCP's appraiser, Paul Bakken, also viewed the income approach as the most pertinent for assessing the value of the Mall. He concluded that a DCF analysis was more appropriate than a direct-capitalization analysis due to the "non-stabilized nature" of the Mall's income during the assessment years. Bakken also applied the sales-comparison approach, comparing Westview Mall to fully enclosed shopping centers in Bemidji, Brainerd, Worthington, Hutchinson, and Dickinson, North Dakota. But he gave no weight to the sales-comparison approach in his final valuation; rather, he used that approach to "confirm[] the values concluded in the income approach to value." He did not apply the cost approach "given the older age of the property and the amount of functional obsolescence present at the property."

The tax court gave no weight to the County's cost-approach valuation because the Mall's age "mak[es] cost estimates inherently less than reliable." The court also gave "little weight" to KCP's sales-comparison-approach valuation because all of Bakken's comparable properties were fully enclosed shopping malls, whereas the vast majority of retailers at Westview Mall have external entrances. Next, the court accepted the County's valuation using the sales-comparison approach but adjusted the amount

4

downward by about 12 percent after rejecting one of the comparable properties and adjusting the value of the remaining comparable properties.[2]

Next, the tax court analyzed the County's income-approach valuation. It gave "little weight" to Ducklow's direct-capitalization analysis because "[a] prospective buyer of the subject property could not have concluded reasonably that on any of the valuation dates, market rents or vacancy rates were stable." By contrast, the tax court concluded that a DCF analysis was an appropriate measure of the Mall's value because the Mall's most likely purchaser was an individual investor, who "would have prepared a [DCF] analysis" in deciding whether to purchase the property. But the tax court gave no weight to the DCF analysis conducted by Bakken because the court was "unable to replicate" many of the calculations included in the report. Although Bakken's appraisal contained all of the data needed to compute the DCF analysis, Bakken conceded at trial that the calculations themselves were contained in a spreadsheet that was not provided to the County or the court during discovery because it was not "asked for." The County objected to KCP's attempt to introduce the spreadsheet at trial. The tax court sustained the County's objection and excluded the evidence on the basis of "unfair surprise," stating at trial that it would "muddle along without" the spreadsheet. The court later rejected KCP's income-approach valuation in its entirety in its final judgment.

---

[2] The court also made an upward adjustment to the County's sales-comparison-approach valuation to account for Ducklow's use of a smaller gross building area.

5

After giving little or no weight to the County's valuations using the cost and income approaches, and KCP's valuations using the sales-comparison and income approaches, the tax court arrived at a final valuation using only the County's sales-comparison-approach analysis. The court valued Westview Mall at $5,535,000 as of January 2, 2010; $5,258,200 as of January 2, 2011; and $4,995,300 as of January 2, 2012. A summary of the County's assessed values, the parties' appraisal opinions, and the tax court's final valuations is as follows:

| Assessment Date | County Assessor | KCP Appraisal (DCF/Income Approach) | County Appraisal (Sales-Comparison Approach) | Tax Court (Sales-Comparison Approach) |
|---|---|---|---|---|
| Jan. 2, 2010 | $4,791,600 | $3,250,000 | $6,684,700 | $5,535,000 |
| Jan. 2, 2011 | $4,821,700 | $2,850,000 | $5,980,400 | $5,258,200 |
| Jan. 2, 2012 | $4,821,700 | $2,800,000 | $5,303,900 | $4,995,300 |

I.

First, KCP argues that the tax court clearly erred by measuring the Mall using its gross building area of 153,749 square feet, rather than the gross leasable area of 129,475 square feet, resulting in an overvaluation of the Mall. We "will not disturb the tax court's valuation of property unless the tax court's decision is clearly erroneous, meaning that the decision is not reasonably supported by the evidence as a whole." *Theobald v. Cty. of Lake*, 712 N.W.2d 180, 182 (Minn. 2006). The tax court's factual findings and conclusions receive deference unless the court has "clearly overvalued or undervalued the subject property, or has completely failed to explain its reasoning." *Id.*

Gross building area and gross leasable area are two measurements used by appraisers to determine the size of a building for tax purposes. *See* Appraisal Inst., *The Appraisal of Real Estate* 225 (14th ed. 2013). Gross building area is the "[t]otal floor area of a building, excluding unenclosed areas, measured from the exterior of the walls." *Id.* Gross leasable area, by contrast, is the "[t]otal floor area designed for the occupancy and exclusive use of tenants." *Id.* Although gross leasable area is "commonly used to measure shopping centers," there is no single correct method for measuring the size of a building, and use of a particular method "varies based on local market practices." *Id.*

KCP argues that, upon determining a market value of $36 per square foot, the tax court should have applied that value to the Mall's gross leasable area (129,475 square feet) rather than its gross building area (153,749 square feet).[3] KCP asserts that by using gross building area, the tax court erroneously assessed a "large swath" of common area that adds no value to the Mall. Moreover, KCP noted that most of the comparable properties used in the County's sales-comparison-approach valuation—which was the only analysis considered by the tax court—lack a common area and therefore have a higher value-per-square-foot than Westview Mall.

The record reveals, however, that Ducklow's analysis, relied on by the tax court, takes into account the lack of common area in the comparable properties. Ducklow adjusted the price of each comparable property to account for differences between those

---

[3] If the tax court had done so, its final valuations would have been $4,661,100 for 2010; $4,428,045 for 2011; and $4,206,642 for 2012.

properties and Westview Mall. One adjustment category is "building efficiency," which resulted in a downward adjustment for comparable properties that lack common areas. Put differently, Ducklow compensated for Westview Mall's common area by adjusting the price per square foot of those comparable properties that lack common areas. KCP does not argue on appeal that Ducklow's building-efficiency adjustments are unsupported by the record,[4] and the tax court accepted those adjustments without comment. Further, the tax court noted that "Bakken's calculations inconsistently mix gross building area and [gross leasable area]." *See also* Appraisal Inst., *supra*, at 224-25 ("Failure to apply measurement techniques and report building dimensions consistently within an assignment can impair the quality of the appraisal."). We conclude that the tax court did not clearly err by using gross building area rather than gross leasable area in its calculations of market value.

## II.

Next, KCP argues that the tax court abused its discretion by rejecting KCP's valuation, which used the sales-comparison and income approaches. Minnesota law requires that all property be assessed at its market value. Minn. Stat. § 273.11, subd. 1 (2014). The law also requires every assessor, "in estimating and determining the value of lands for the purpose of taxation, to consider and give due weight to every element and factor affecting the market value thereof." Minn. Stat. § 273.12 (2014). We apply a

---

[4] Indeed, the trial transcript reveals that KCP understood that the building-efficiency adjustments relate to the common area, as KCP's counsel asked Ducklow several questions about those adjustments.

deferential standard of review when reviewing the tax court's determination of market value. *Eden Prairie Mall, LLC v. Cty. of Hennepin*, 797 N.W.2d 186, 192 (Minn. 2011).

> This court will not disturb the tax court's valuation of property for tax purposes unless the tax court's decision is clearly erroneous, which means the decision is not reasonably supported by the evidence as a whole. The tax court's decision should be considered clearly erroneous only when this court is left with a " 'definite and firm conviction that a mistake has been committed' . . . ." The taxpayer has the burden of showing that the valuation reached by the assessor is excessive. The inexact nature of property assessment necessitates that this court defer to the decision of the tax court unless the tax court has either clearly overvalued or undervalued the subject property, or has completely failed to explain its reasoning.

*Equitable Life Assurance Soc'y of U.S. v. Cty. of Ramsey*, 530 N.W.2d 544, 552 (Minn. 1995) (citations omitted) (quoting *Westling v. Cty. of Mille Lacs*, 512 N.W.2d 863, 866 (Minn. 1994)).

A.

KCP first argues that the tax court clearly erred when it rejected KCP's market valuation using the sales-comparison approach. Although the tax court is not bound to accept the valuation of a party's appraiser, the reasoning for rejecting an analysis cannot be "illogical." *Am. Express Fin. Advisors, Inc. v. Cty. of Carver*, 573 N.W.2d 651, 658 (Minn. 1998). Rather, "the tax court . . . should carefully explain its reasoning for rejecting the appraisal testimony . . . and adequately describe the factual support in the record for its determination." *Eden Prairie Mall*, 797 N.W.2d at 194.

The tax court did not clearly err by rejecting KCP's valuation using the sales-comparison approach. The court explained that Bakken included only fully enclosed malls as comparable properties, and that these properties are too dissimilar from

9

Westview Mall, in which less than 20% of stores lack an external entrance. Further, the court noted that all of Bakken's comparable properties are located outside the Twin Cities metro area, whereas all of the County's comparable properties are located within the metro area. This observation implied that KCP's focus on fully enclosed malls located elsewhere in Minnesota led to a selection of properties too geographically distant from Westview Mall to be comparable to the subject property. Thus, the tax court did not "completely fail[] to explain its reasoning." *Theobald*, 712 N.W.2d at 182.

B.

KCP also argues that the tax court clearly erred by rejecting its DCF analysis, which Bakken used to arrive at his income-approach valuation. In *Northwest Racquet Swim & Health Clubs, Inc. v. County of Dakota*, we concluded that the tax court did not clearly err by rejecting the parties' income-approach valuations because the taxpayer failed to submit essential revenue and expense data, making it "impossible to determine actual . . . income and expense figures." 557 N.W.2d 582, 587 (Minn. 1997).

We stated that, although the income approach "would have been useful" in valuing the property, the court's actions were justified given the lack of data available in the record. *Id.* at 587-88. We reached the opposite conclusion in *American Express Financial Advisors, Inc. v. County of Carver*, 573 N.W.2d 659, 658 (Minn. 1998), in which the tax court rejected both parties' income-approach valuations. We concluded that the tax court's reasoning for rejecting the parties' income-approach data was "illogical" in light of the "wealth of local and national income data" that the parties presented to the court. *Id.* at 659.

10

Here, the tax court rejected the DCF analysis because Bakken's appraisal did not include the spreadsheet showing his calculations, and therefore the court said it was "unable to replicate Mr. Bakken's calculations of base rental revenue, losses due to absorption and turnover vacancy, [common area maintenance] charges, losses due to 'general vacancy,' expenditures for tenant improvements, or expenditures for leasing commissions." But, unlike in *Northwest Racquet*, in which vital revenue and expense data was completely missing, 557 N.W.2d at 587, the substantive data needed here to complete the DCF analysis was contained in Bakken's appraisal, even though the appraisal did not contain the calculations themselves. Put differently, the DCF data, though perhaps not in its most accessible form, was available to the court. Indeed, the court's initial reaction when it excluded Bakken's spreadsheet—that it would "muddle along without it"—belies the court's subsequent decision to reject the DCF analysis because the court implied that it would be able to work out the calculations without the spreadsheet or, at least, would not need the excluded exhibit. Moreover, we have stated that the tax court need not disclose its spreadsheets when the court conducts its own independent DCF analysis. *Equitable Life*, 530 N.W.2d at 558. Surely, then, a party does not invalidate its DCF analysis by failing to introduce its spreadsheets into evidence.

The County argues that the tax court did not err by rejecting the DCF analysis because Bakken's appraisal was "not comprehensive" when predicting several values, including discount rate, prospective net operating income, and total potential gross revenue. But the tax court rejected the DCF analysis because it could not "replicate" the calculations, not because the values were unsupported or unreasonable. The tax court

11

need not accept an appraiser's valuation in its entirety; instead, it may adjust the calculations based on evidence in the record and its own expertise. *See Montgomery Ward & Co. v. Cty. of Hennepin*, 450 N.W.2d 299, 308 (Minn. 1990) ("Rarely is one appraiser's methodology and opinion accepted in its entirety by the Court."). For example, the court made several adjustments to the County's sales-comparison-approach valuation before accepting it. The court could have similarly adjusted the values included in Bakken's DCF analysis, rather than rejecting his analysis outright. We therefore conclude that the tax court clearly erred by rejecting KCP's DCF analysis.

III.

Next, KCP argues that the tax court abused its discretion when it determined the market value of Westview Mall using only the sales-comparison approach. We recognize three basic approaches to determining the market value of real estate: income, sales-comparison, and cost. *Equitable Life*, 530 N.W.2d at 552. Application of multiple approaches to determine market value is "usually appropriate and necessary" because "the alternative value indications derived can serve as useful checks on each other." *Id.* at 553. However, "neither judicial nor statutory law mandates the tax court give weight to all three valuation approaches." *Id.* at 554. Instead, the weight given to each approach depends on "the quantity and quality of available data." *Nw. Racquet*, 557 N.W.2d at 587. The tax court may therefore rely on a single approach under certain circumstances, "provided the court clearly explains the weaknesses of the rejected approaches." *Id.*; *see Equitable Life*, 530 N.W.2d at 554 (affirming the tax court's sole reliance on the income approach).

12

KCP argues that the tax court abused its discretion by failing to consider the income approach in its final valuation. We have "recognized the usefulness of the income approach in valuing income producing properties." *Nw. Racquet*, 557 N.W.2d at 587. In *Equitable Life*, we affirmed the tax court's determination of market value using only the income approach because both parties' appraisers gave significant weight to that approach, and the uncommon circumstances surrounding the property made other approaches unreliable. 530 N.W.2d at 554. Similarly, in *Montgomery Ward & Co. v. County of Hennepin*, we concluded that the "income approach estimate should have been given over-riding weight" due to the "inherent weaknesses of the cost approach and the absence of truly comparable sales." 450 N.W.2d at 308.

This is not a case in which the tax court could value an income-producing property without considering the income approach. Both parties relied heavily on the income approach in their appraisals; it constituted 70% of the County's valuation and 100% of KCP's valuation. Moreover, the tax court stated that a DCF analysis was appropriate here because it "represents one approach by which prospective buyers and sellers of the subject property would evaluate the subject property as an investment." As explained above, the court clearly erred by rejecting KCP's DCF analysis. In light of this error, as well as the "over-riding weight" often afforded to the income approach in valuations involving income-producing properties, *see Montgomery Ward*, 450 N.W.2d at 308, we conclude that the tax court abused its discretion by relying solely on the sales-comparison approach.

IV.

We conclude that the tax court clearly erred by rejecting KCP's DCF analysis and abused its discretion when it failed to consider the income approach in its final valuation. The court's valuation of Westview Mall therefore was not supported by the record as a whole. Accordingly, we remand to the tax court for further proceedings consistent with this opinion. The tax court may, if necessary, reopen the record and conduct a further evidentiary hearing.[5]

Affirmed in part, vacated and remanded.

---

[5] We note that the spreadsheet showing Bakken's DCF calculations was excluded from trial due to "unfair surprise," and that this objection would not apply if KCP introduces the spreadsheet in a future evidentiary hearing. *See Montgomery Ward & Co. v. Cty. of Hennepin*, 482 N.W.2d 785, 788 (Minn. 1992).