CHUTICH, Justice.
*384 In this consolidated tax appeal we must determine whether retail stores that permit franchisees to operate their businesses inside the retail store in exchange for rent are "income-producing properties" within the meaning of the tax statute's mandatory-disclosure provision. See Minn. Stat. § 278.05, subd. 6(a) (2018). When an owner of real property challenges the county assessor's valuation of a property that is "income-producing," the owner must disclose certain information by August 1 of the taxes-payable year. Id. Failure to disclose this information by the deadline results in dismissal of the taxpayer's petition, unless an exception applies. Id. , subd. 6(b).
Relator Wal-Mart Real Estate Business Trust ("Trust") owns three parcels of land in Anoka County ("County"). Each parcel has a Walmart retail store, operated by Walmart, Inc. ("Walmart"). The Trust is a wholly-owned subsidiary of Walmart.
The Trust filed petitions challenging the County's assessment of the three parcels. The tax court dismissed the petitions, however, because the Trust failed to provide the information required by the mandatory-disclosure provision before the deadline. The Trust filed timely certiorari appeals from the tax court's orders dismissing the petitions. It claims that it is not subject to the mandatory-disclosure rule because the Walmart stores are not "income-producing." We consolidated the three appeals for briefing and non-oral consideration. Because we agree with the tax court that the properties are "income-producing" and that the Trust's disclosures were inadequate, we affirm the dismissal of the petitions.
FACTS
Three of the Trust's retail properties are at issue here: Ball Road, Blaine ("Ball Road store"), Ulysses Street, Blaine ("Ulysses Street store"), and University Avenue, Fridley ("University Avenue store"). Although the Trust owns all three parcels, it receives no income tied to the properties because retail income is kept by Walmart and recorded as ordinary business income. Walmart does not pay rent to the Trust.
Walmart has contracted with several "vestibule businesses" to operate within its stores. Among the three properties at issue, Walmart has vestibule arrangements with four entities: Twin Towers Trading Site Management, LLC, a franchisor of *385 Subway sandwich restaurants; Da-Vi Nails Salon and Spa, LLC, which operates nail salons; Seva Beauty, LLC, which operates beauty salons and spas; and Regis Corporation, which operates hair salons. The Ball Road store has a Subway, a Da-Vi Nails salon, and a Seva Beauty salon. The Ulysses Street store has a Subway and a Regis hair salon. The Fridley store has a Subway.
These vestibule arrangements are governed by generally applicable master lease agreements along with site-specific attachments to the master agreement. The Trust is not a party to any of these agreements. The master lease agreements are negotiated by Walmart on a national scale and include, among other terms, promises by Walmart to deliver possession of the premises to the vestibule occupant in exchange for promises by that occupant to pay rent. The site-specific attachments provide further terms, such as a description of the leased premises, the amount of rent, the duration of the lease, and the allocation of specific costs such as utilities fees, taxes, repairs, and insurance.
Although the specific terms vary, the master agreements and attachments follow more or less the same format. Each attachment separately defines the "leased premises" and requires the vestibule occupant to pay a monthly "base rent" plus a percentage of the occupant's gross sales. The rent formula is only slightly different for each occupant. The Subway franchisor, for example, paid no monthly base rent at the Ball Road and Ulysses Street stores, instead agreeing to pay a graduating percentage of gross sales, calculated monthly. Da-Vi Nails, by contrast, paid a monthly base rent, plus a percentage of annual gross sales. The other agreements followed variations on this formula.
The properties were assessed by the County as of January 2, 2016, and the Trust contested these valuations in tax petitions filed for each store. The deadline for the mandatory disclosures required by Minnesota Statutes section 278.05, subdivision 6(a) was August 1, 2017. On July 30, 2017, the Trust emailed the county assessor's office a one-page document for each property entitled "2017 Compliance Submission." This document contained the following information arranged in a small chart: "Starting Date," "Ending Date," "Gross Amount," "Rentable Area," "Annual Sq. Ft.," and "Annual Gross." Although the Trust now contends that it was never obligated to provide any information to the County under this statute because the properties are not "income-producing," it explains that it submitted this information to the County out of an abundance of caution.
Claiming that the informational charts submitted by the Trust were not adequate under the statute, the County moved to dismiss the petitions. The Trust opposed the motions, arguing that the properties are not income-producing because the money generated from the vestibule agreements is "business income" for Walmart, and not rental income for the Trust. The Trust also contended that, even if the properties are income-producing, its submissions were adequate under the statute because each chart represents all the information in its possession regarding the vestibule occupants. To support its argument, the Trust provided the tax court with copies of the master agreements and site-specific attachments that had not been previously disclosed to the County.
The tax court rejected the Trust's view of the arrangements between Walmart and the vestibule occupants, finding that the agreements were property leases that produced income and concluding that the Trust's July 30, 2017 compliance submissions were inadequate. Consequently, the *386 tax court dismissed the Trust's petitions. This certiorari appeal follows.
ANALYSIS
Our review of tax court decisions is limited to determining whether "the Tax Court was without jurisdiction, that the order of the Tax Court was not justified by the evidence or was not in conformity with law, or that the Tax Court committed any other error of law." Minn. Stat. § 271.10, subd. 1 (2018). We review the tax court's application of law de novo. Langer v. Comm'r of Revenue , 773 N.W.2d 77, 80 (Minn. 2009). The tax court's findings of fact are reviewed for clear error. Antonello v. Comm'r of Revenue , 884 N.W.2d 640, 647 (Minn. 2016). Whether the Trust's properties are income-producing, and if so, whether its disclosures satisfy the statutory requirement, are questions that involve the application of law to facts and are subject to de novo review. See Morton Bldgs., Inc. v. Comm'r of Revenue , 488 N.W.2d 254, 257 (Minn. 1992).
I.
Under the Minnesota statutes governing tax petitions, a property tax petitioner that "contests the valuation of income-producing property" must provide, "no later than August 1 of the taxes payable year," the following information:
(1) a year-end financial statement for the year prior to the assessment date;
(2) a year-end financial statement for the year of the assessment date;
(3) a rent roll on or near the assessment date listing the tenant name, lease start and end dates, base rent, square footage leased and vacant space;
(4) identification of all lease agreements not disclosed on a rent roll in the response to clause (3), listing the tenant name, lease start and end dates, base rent, and square footage leased;
(5) net rentable square footage of the building or buildings; and
(6) anticipated income and expenses in the form of a proposed budget for the year subsequent to the year of the assessment date.
Minn. Stat. § 278.05, subd. 6(a). Failure to comply triggers dismissal of the petition. Id. , subd. 6(b). This "mandatory-disclosure rule" ensures that a property-tax petitioner " 'provide[s] information [to a county] that would be useful to the determination of value,' and ... provide[s] 'an adequate, speedy, and simple remedy' to petitioners who wish to contest a county's assessment of property taxes." 78th St. OwnerCo, LLC v. County of Hennepin , 813 N.W.2d 409, 413 (Minn. 2012) (quoting Kmart Corp. v. County of Becker , 639 N.W.2d 856, 859-60 (Minn. 2002) ).
The term "income-producing" is not defined by the statute. We have stated, however, that "[t]he traditional notion of 'income-producing' property is property that generates rental income for its owner on the basis of an arms-length, market-based lease, but the term is not necessarily limited to rental property." Nw. Airlines, Inc. v. County of Hennepin , 632 N.W.2d 216, 219 (Minn. 2001) (citations omitted); see also County of Becker , 639 N.W.2d at 859 n.1 ("Property that generates rental income for its owner is considered to be income-producing.").
As a threshold matter, we reject the Trust's argument that the burden to prove that the properties are income-producing is on the County. The statute is silent on whether any party has this burden. Instead, the statute categorically requires a property owner to comply with the mandatory-disclosure directive for any property that is "income-producing." See Minn. Stat. § 278.05, subd. 6(a) ; cf. County of Becker , 639 N.W.2d at 859 ("The text of the statute *387 is clear-information must be timely provided unless it is unavailable.").
Regardless of which party has the burden, the record demonstrated that the properties were income-producing. The County submitted a sworn declaration from a senior appraiser stating that he personally observed the vestibule businesses within the Walmart stores at issue and provided copies of the compliance submissions emailed to the County by the Trust's counsel that showed income had been generated from the vestibule arrangements.
Turning to whether the properties at issue here are "income-producing," the Trust claims that the mandatory-disclosure rule does not apply because only Walmart, and not the Trust, received income from the vestibule occupants. It also notes that the master agreements were negotiated at a national scale; thus, the Trust claims that they are not arms-length lease agreements that reflect local real estate conditions. Because the agreements, by their terms, would not pass to a purchaser of the Trust's property, the Trust further argues that the information about the vestibule occupants is irrelevant to a valuation analysis.
These arguments are unpersuasive. First, no support exists for the Trust's claim that, because the Trust did not itself receive any payments under the vestibule agreements, it is absolved of its duties under the mandatory-disclosure rule. The term "income-producing property" simply means that the mandatory-disclosure obligation is triggered whenever the property itself generates income, and not just, as the Trust argues, when the property owner is the recipient of that income. As we explained in Northwest Airlines , "the importance of the income-producing nature of the property is in arriving at a reliable market value for tax purposes." 632 N.W.2d at 220. One method of calculating an "income approach" to valuation, which is the approach reflected in the mandatory-disclosure rule, capitalizes the income that is generated by the property "to arrive at its market value."[1] Id. In determining the fair market value of a property, the ultimate recipient of the income generated by an income-producing property is not relevant.[2] What matters instead is the amount of income that the property generates because this figure provides evidence of "what the parties determined in an arms-length negotiation to be the value of the property, as reflected by the rent to be paid." Id. ; cf. Kmart Corp. v. County of Stearns , 710 N.W.2d 761, 766 (Minn. 2006) ("The focus of a *388 property tax appraisal is to determine the fair market value of the property to the owner (the landlord).").
Second, the Trust contends that the mandatory-disclosure rule only applies to property that generates income under a landlord-tenant arrangement. It considers the vestibule agreements to be nationwide licensing agreements that, the Trust asserts, could not possibly provide insight on the value of the properties at issue. According to the Trust, the vestibule income has no relationship to the properties themselves, but is instead driven by Walmart's business acumen.
This interpretation of the agreements strains credulity and is also misplaced.[3] We have stated that "the term [income-producing property] is not necessarily limited to rental property." Nw. Airlines , 632 N.W.2d at 219. The mandatory-disclosure rule applies to property that generates income. Whether or not the information provided by a taxpayer gives an accurate picture of a property's actual value is a question that goes to the merits of the petition itself. The mandatory-disclosure rule applies without regard to the merits of the tax petition, however. As we have stated before, "[a] petitioner may not refuse to provide information based on its own assessment that such information is inaccurate or incomplete and thus unhelpful to valuation." 78th St. OwnerCo, LLC , 813 N.W.2d at 414 (citing BFW Co. v. County of Ramsey , 566 N.W.2d 702, 705 (Minn. 1997) ). Rather, at this early stage, it is imperative that the County have the information enumerated in the statute because the statutory mandate to the assessor is to " 'consider and give due weight to every element and factor affecting the market value [of the property].' " County of Stearns , 710 N.W.2d at 766 (quoting Minn. Stat. § 273.12 (2004) ); see also County of Becker , 639 N.W.2d at 861 (noting that without the mandatory disclosures, "the assessor could not begin the valuation process").
As demonstrated by the Trust's own disclosures to the County and the lease agreements and site-specific attachments provided by the Trust in its opposition to the motion to dismiss, the three properties at issue each generated income from the vestibule occupants. The properties were therefore income-producing and the Trust is subject to the mandatory-disclosure rule. Minn. Stat. § 278.05, subd. 6(a).
II.
We next turn to whether the Trust's disclosures satisfied the requirements of the mandatory-disclosure rule. Minn. Stat. § 278.05, subd. 6(a). Although dismissal is a harsh remedy for noncompliance, we have never wavered from strict adherence to the rule. County of Stearns , 710 N.W.2d at 766-67 ; see also Irongate Enters., Inc. v. County of St. Louis , 736 N.W.2d 326, 331 (Minn. 2007) ("We recognize the harsh nature of the remedy imposed by [the statute] .... But that remedy was enacted by the legislature, and any disagreement with the policy underlying that decision or rule should be directed to *389 the legislature."); County of Becker , 639 N.W.2d at 859 (noting that the rule "provides an extraordinary remedy unlike our traditional rules of discovery").
The tax court found the Trust's July 30, 2017 compliance submissions to be facially inadequate because they only provided "starting and ending dates, the gross monthly rent, and the rentable area under each lease." We agree. The Trust's disclosures were far from adequate. The information that the Trust did provide related only to the third category of information required under the rule: "a rent roll on or near the assessment date listing the tenant name, lease start and end dates, base rent, square footage leased and vacant space." Minn. Stat. § 278.05, subd. 6(a)(3). The compliance submissions still did not fully satisfy this provision, however, because they do not demonstrate that the information was current as of the assessment date and do not disclose the square footage of vacant space.
Despite the information that the Trust did provide, much required information was missing. The statute also requires "a year-end financial statement for the year prior to the assessment date" and "for the year of the assessment date," id. , subd. 6(a)(1)-(2), "identification of all lease agreements not disclosed on the rent roll ... [including] tenant name, lease start and end dates, base rent, and square footage leased," id. , subd. 6(a)(4), "net rentable square footage of the building," id. , subd. 6(a)(5), and "anticipated income and expenses ... for the year subsequent to the year of the assessment date," id. , subd. 6(a)(6). The Trust does not dispute that it failed to produce any of this information.
The only defense raised by the Trust to the lack of disclosure is its contention that it did not possess the required information. Yet, the Trust does not dispute that it had access to the information relevant to the disclosure requirements. To be sure, a petitioner need not create documents that do not exist to satisfy the mandatory-disclosure rule. If a petitioner does not have the precise documents mentioned in the statute, it is still obligated to provide the information that it does have if it is kept in a different format. 78th St. OwnerCo, LLC , 813 N.W.2d at 415-16 (concluding that a petitioner that did not keep a document called a "rent roll" must still provide the information enumerated in the rent roll provision if that information is available in other documents).[4]
Because the Trust's compliance submissions did not satisfy every category of information enumerated by the mandatory-disclosure rule, and no exception to the rule applies, the tax court correctly dismissed the Trust's petitions under Minnesota Statutes section 278.05, subdivision 6(b).
CONCLUSION
For the foregoing reasons, we affirm the tax court's decision dismissing the tax petitions.
Affirmed.
ANDERSON, J., took no part in the consideration or decision of this case.

The income approach to valuation also includes non-capitalization methods, such as a discounted cash flow analysis. See, e.g. , KCP Hastings, LLC v. County of Dakota , 868 N.W.2d 268, 271 (Minn. 2015) (noting that although both appraisers used the "income approach" to valuation, one used "a direct-capitalization technique" to arrive at the income-approach value, while another appraiser used "a discounted cash flow analysis" to arrive at the income approach to value). But as we explain here, whatever valuation method ultimately provides the most accurate appraisal has no bearing on a party's initial obligation to comply with the mandatory-disclosure directive.

Under the Trust's position, a savvy owner of income-producing property could easily frustrate a county's efforts to fairly assess a property's value by placing ownership of a property in a separate entity. Indeed here, the Trust is wholly-owned by the recipient of the vestibule income, Walmart. That Walmart, which does not directly own any of the properties at issue here, was nevertheless denominated "Landlord" in each of the master lease agreements and site-specific attachments only underscores our view that it is a property's income-producing nature, and not the property owner's formal relationship to the property, that matters for the mandatory-disclosure rule to be operative.

Although the Trust and Walmart may consider these agreements to be "licensing" agreements, the agreements create a tenancy relationship under black-letter law. They each contain a definition of the premises and a promise to deliver possession of the premises to the vestibule occupant in exchange for rent for a defined period of time. See Gates v. Herberger , 202 Minn. 610, 279 N.W. 711, 712 (1938) ("The relation of landlord and tenant exists where one person occupies the premises of another in subordination to that other's title and with his consent."). The master agreements are even entitled "Master Lease Agreement" and disavow any relationship other than that of landlord and tenant. Although not determinative to our conclusion here, the Trust's argument that the agreements are not leases is meritless.

The tax court also concluded that even if the Trust provided information that facially met the six enumerated categories under the mandatory-disclosure rule, the compliance submissions were inadequate because they materially conflict with the terms of the leases that the Trust produced in opposition to the County's motion to dismiss, such as start and end dates and amount of rent. We need not address this deficiency here because even assuming that the information that the Trust provided was accurate, several required categories under the mandatory-disclosure rule remain unmet.